1

QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Amar L. Thakur (Bar No. 194025)

2

   amarthakur@quinnemanuel.com
   Bruce Zisser (Bar No. 180607)

3

   brucezisser@quinnemanuel.com

4

   865 S. Figueroa St., 10th Floor
   Los Angeles, CA 90017

5

   Phone:  (213) 443-3000

6

   Fax:  (213) 443-3100

7

8

*Attorneys for Plaintiff Monument Peak Ventures, LLC*

9

10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11

12

MONUMENT PEAK VENTURES, LLC

13

14

            Plaintiff,

15

      vs.

16

GE HEALTHCARE, INC.

17

            Defendant.

Case No.  **'18 CV 1158 GPC JLB**

**COMPLAINT FOR PATENT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

18

19

20

21

22

23

24

25

26

27

28

# COMPLAINT

Plaintiff Monument Peak Ventures, LLC ("MPV") hereby submits its Complaint against Defendant GE Healthcare, Inc. ("GE Healthcare") and alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action for infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

2.     Defendant has infringed and continues to infringe, has induced and continues to induce infringement of, and has contributed to and continues to contribute to the infringement of, one or more claims of MPV's U.S. Patent Nos. 7,062,085 ("the '085 patent"), 7,092,573 ("the '573 patent"), 7,212,668 ("the '668 patent"), 6,509,910 ("the '910 patent") and 8,984,419 ("the '419 patent) (collectively the "Asserted Patents") at least by providing software tools and other instrumentalities as described below.

3.     On or about July 26, 2017, MPV contacted GE Healthcare with a list of all patents owned by MPV and a presentation introducing the Kodak portfolio and its application to GE Healthcare's products.  On or about August 15, 2017, MPV further informed GE Healthcare of its infringement through a data room that included a full list of all Patents owned by MPV and evidence of use presentations detailing GE Healthcare's infringement of sixteen MPV Patents, including the Asserted Patents. The data room has been accessible to GE Healthcare for nine months and remains accessible to GE Healthcare as of the filing of the complaint.

## THE PARTIES

4.     Plaintiff MPV is a Texas limited liability company with its principal place of business in Plano, Texas.

5.     Upon information and belief, Defendant GE Healthcare is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Chicago, Illinois.

1

## JURISDICTION AND VENUE

2      6.     This Court has subject matter jurisdiction over MPV's claims for patent

3   infringement pursuant to the 28 U.S.C. §§ 1331 and 1338(a).

4      7.     Upon information and belief, this Court has personal jurisdiction over

5   GE Healthcare in this action because GE Healthcare has committed acts within this

6   District giving rise to this action and has established minimum contacts with this

7   forum such that the exercise of jurisdiction over GE Healthcare would not offend

8   traditional notions of fair play and substantial justice.  GE Healthcare has committed

9   acts of patent infringement and has regularly and systematically conducted and

10  solicited business in this District by and through at least its sales and offers for sale

11  of GE Healthcare products and/or services in this District and, on information and

12  belief, leases or owns office space in this District.

13     8.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and

14  1400(b) at least because GE Healthcare has committed acts of infringement in this

15  District and has a regular and established place of business in this District.  On

16  information and belief, GE Healthcare employs many people in this District,

17  including at least at its facility at 9276 Scranton Road, Suite 400, San Diego, CA

18  92121.

19  **The Asserted Patents Come From the Iconic Kodak Patent Portfolio**

20     9.     The Asserted Patents claim inventions born from the ingenuity of the

21  Eastman Kodak Company ("Kodak"), an iconic American imaging technology

22  company that dates back to the late 1800s. The first model of a Kodak camera was

23  released in 1888.

24

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT



10.     In 1935 Kodak introduced "Kodachrome," a color reversal stock for movie and slide film.  In 1963 Kodak introduced the Instamatic camera, an easy-to-load point-and-shoot camera.

11.     By 1976 Kodak was responsible for 90% of the photographic film and 85% of the cameras sold in the United States.

12.     At the peak of its domination of the camera industry, Kodak invented the first self-contained digital camera in 1975.

COMPLAINT FOR PATENT INFRINGEMENT



13.    By 1986 Kodak had created the first megapixel sensor that was capable of recording 1,400,000 pixels.  While innovating in the digital imaging space, Kodak developed an immense patent portfolio and extensively licensed its technology in the space.  For example, in 2010, Kodak received $838,000,000 in Patent licensing revenue.  As part of a reorganization of its business, Kodak sold many of its Patents to some of the biggest names in technology that included Google, Facebook, Amazon, Microsoft, Samsung, Adobe Systems, HTC and others for $525,000,000.

14.    While scores of digital imaging companies have paid to license the Kodak Patent portfolio owned by MPV, GE Healthcare has refused to do so without justification.

### FIRST CAUSE OF ACTION
### Infringement of Patent No. 7,062,085

15.    MPV incorporates the foregoing paragraphs as though fully set forth herein.

16.    MPV owns by assignment the entire right, title, and interest in the '085 Patent.

17.    The '085 Patent was issued by the United States Patent and Trademark Office on June 13, 2006, and is titled "Method for detecting subject matter regions

1  in images." A true and correct copy of the '085 patent is attached hereto as Exhibit
2  A.

3      18.    Upon information and belief, GE Healthcare has directly infringed at
4  least claim 1 of the '085 Patent by making, using, testing, selling, offering for sale,
5  importing and/or licensing in the United States without authority image analysis
6  software, including without limitation the IN Carta image analysis software, ("the
7  '085 Infringing Instrumentalities").

8      19.    One or more of the '085 Infringing Instrumentalities meets all the
9  limitations of claim 1 of the '085 Patent.  Set forth below (with claim language in
10 italics) is an exemplary description of the infringement of claim 1 of the '085 patent
11 in connection with the IN Carta image analysis software.  MPV reserves the right to
12 modify this description, including, for example, on the basis of information about
13 the '085 Infringing Instrumentalities that it obtains during discovery:

14     *1.    A method for detecting subject matter regions in a digital color image*
15 *having pixels of (red, green, blue) values, comprising the steps of:*  To the extent the
16 preamble is limiting, the IN Carta image analysis software analyzes images created
17 with florescence microscopy using the fluoresced colors to detect specific regions of
18 the tissue sample within the image.

### IN Carta image analysis software
Powerful analytics combined with an intuitive user interface provides fast, quantitative results from images acquired on IN Cell Analyzer systems.





EGFP-2xFYVE to label early endosomes    Hoechst, EGFP-2xFYVE to label early endosomes

**Faster Data**
- Intuitive design makes complex analysis accessible with minimal training
- Shorten analysis time with true parallel processing

**Reliable Data**
- Sophisticated algorithms generate reliable data with minimal user input
- Improved segmentation algorithms represent cellular structures more accurately

https://cdn.gelifesciences.com/dmm3bwsv3/AssetStream.aspx?mediaformatid=10061&destinationid=10016&assetid=18464.

COMPLAINT FOR PATENT INFRINGEMENT

1    *a) assigning to each pixel a belief value as belonging to the subject matter*
2  *region based on color and texture features;* On information and belief, based on the
3  fluoresced color and texture features, the analysis software can assign to each pixel a
4  belief value as to whether it is part of the target subject matter.



Primary cortical neurons with DAPI (blue) and microtubule-associated
protein 2 (green)

*Id.*

*b) forming spatially contiguous candidate subject matter regions by*
*thresholding the belief values*;  On information and belief, based on those regions
having belief values above a certain threshold, the software will form spatially
contiguous regions it identifies as candidates for the target subject matter.

COMPLAINT FOR PATENT INFRINGEMENT

1    *c) analyzing the spatially contiguous regions based on one or more unique*

2    *characteristics of the subject matter to determine the probability that a region*

3    *belongs to the subject matter*;  On information and belief, the IN Carta software will

4    further analyze the contiguous regions based on characteristics of the subject matter

5    to determine the probability that those regions actually belong to the target subject



16   matter.

17   https://www.gelifesciences.com/en/es/shop/cell-imaging-and-analysis/high-content-

18   analysis-systems/software/in-carta-image-analysis-software-p-00329#tech-spec-

19   table.

20       *d) generating a map of detected subject matter regions and associated*

21   *probability that the regions belongs to the subject matter.*  On information and

22   belief, using the results of the process described above, the software generates a map

23   of the detected subject matter regions and the probability that that map is correct.

24       20.    GE Healthcare has thus infringed at least claim 1 of the '085 Patent by

25   making, using, testing, selling, offering for sale, importing and/or licensing the '085

26   Infringing Instrumentalities such that all steps of at least claim 1 are performed.

27       21.    The users, customers, agents and/or other third parties of the '085

28   Infringing Instrumentalities (collectively, "third-party infringers") infringed,

COMPLAINT FOR PATENT INFRINGEMENT

1  including under 35 U.S.C. § 271(a), at least claim 1 of the '085 Patent by using the
2  '085 Infringing Instrumentalities.

3       22.    GE Healthcare has, since at least no later than August 15, 2017, known
4  or been willfully blind to the fact that the third-party infringers' use of the '085
5  Infringing Instrumentalities directly infringes the '085 Patent.

6       23.    GE Healthcare's knowledge of the '085 Patent, which covers operating
7  the '085 Infringing Instrumentalities in their intended manner and such that all
8  limitations of at least claim 1 of the '085 Patent are met, made it known to GE
9  Healthcare that the third-party infringers' use of the '085 Infringing
10  Instrumentalities would directly infringe the '085 Patent, or, at the very least, render
11  GE Healthcare willfully blind to such infringement.

12       24.    Having known or been willfully blind to the fact that the third-party
13  infringers' use of the '085 Infringing Instrumentalities in their intended manner and
14  such that all limitations of at least claim 1 of the '085 Patent are met would directly
15  infringe the '085 Patent, GE Healthcare, upon information and belief, actively
16  encouraged the third-party infringers to directly infringe the '085 Patent by making,
17  using, testing, selling, offering for sale, importing and/or licensing said '085
18  Infringing Instrumentalities, and by, for example, marketing '085 Infringing
19  Instrumentalities to the third-party infringers; supporting and managing the third-
20  party infringers' continued use of the '085 Infringing Instrumentalities; and
21  providing technical assistance to the third-party infringers during their continued use
22  of the '085 Infringing Instrumentalities.  *See*, *e.g.*, IN Cell Analyzer 2200/2000 User
23  Reference Manual, available at
24  http://incelldownload.gehealthcare.com/bin/download_data/INCell2200/V5.0/User
25  %20Manual.pdf.

26       25.    Thus, GE Healthcare has specifically intended to induce, and has
27  induced, the third-party infringers to infringe at least claim 1 of the '085 Patent, and
28  GE Healthcare has known of or been willfully blind to such infringement.  GE

Healthcare has advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the '085 Infringing Instrumentalities.

26.    Based on, among other things, the foregoing facts, GE Healthcare has induced infringement under 35 U.S.C. § 271(b) of at least claim 1 of the '085 Patent.

27.    Further, GE Healthcare provided and/or licensed to the third-party infringers '085 Infringing Instrumentalities that are especially made and adapted— and specifically intended by GE Healthcare—to be used as components and material parts of the inventions covered by the '085 Patent.  For example, GE Healthcare provided the accused software and related product documentation and instructions, which the third-party infringers used in a manner such that all limitations of at least claim 1 of the '085 Patent are met, and without which the third-party infringers would be unable to have used and availed themselves of the '085 Infringing Instrumentalities in their intended manner.

28.    Upon information and belief, GE Healthcare also knew that the '085 Infringing Instrumentalities operate in a manner that satisfies all limitations of at least claim 1 of the '085 Patent.

29.    The subject matter detection technology in the '085 Infringing Instrumentalities is specially made and adapted to infringe at least claim 1 of the '085 Patent.  Upon information and belief, the subject matter detection technology in the '085 Infringing Instrumentalities is not a staple article or commodity of commerce, and, because the functionality is designed to work with the '085 Infringing Instrumentalities solely in a manner that is covered by the '085 Patent, it does not have a substantial non-infringing use.  At least by no later than August 15, 2017, based on the foregoing facts, GE Healthcare has known or been willfully blind to the fact that such functionality is especially made and adapted for—and is in

1  fact used in—'085 Infringing Instrumentalities in a manner that is covered by the
2  '085 Patent.

3      30.    Based on, among other things, the foregoing facts, GE Healthcare has
4  contributorily infringed at least claim 1 of the '085 Patent under 35 U.S.C. § 271(c).

5      31.    GE Healthcare's acts of infringement of the '085 Patent have been
6  willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
7  136 S. Ct. 1923 (2016).  Since at least August 15, 2017, GE Healthcare has willfully
8  infringed the '085 Patent by refusing to take a license and continuing the foregoing
9  infringement.

10     32.    GE Healthcare's acts of direct and indirect infringement have caused
11 damage to MPV, and MPV is entitled to recover damages sustained as a result of
12 GE Healthcare's wrongful acts in an amount subject to proof at trial.

13                    **SECOND CAUSE OF ACTION**
14                 **Infringement of Patent No. 7,092,573**

15     33.    MPV incorporates the foregoing paragraphs as though fully set forth
16 herein.

17     34.    MPV owns by assignment the entire right, title, and interest in the '573
18 Patent.

19     35.    The '573 Patent was issued by the United States Patent and Trademark
20 Office on August 15, 2006 and is titled "Method and system for selectively applying
21 enhancement to an image." A true and correct copy of the '573 patent is attached
22 hereto as Exhibit B.

23     36.    Upon information and belief, GE Healthcare has directly infringed at
24 least claim 1 of the '573 Patent by making, using, testing, selling, offering for sale,
25 importing and/or licensing in the United States without authority image analysis
26 software, including without limitation GE Healthcare's Advanced Visualization
27 software tools, including, for example, Thoracic VCAR ("the '573 Infringing
28 Instrumentalities").

37.     One or more of the '573 Infringing Instrumentalities meets all the limitations of claim 1 of the '573 Patent.  Set forth below (with claim language in italics) is an exemplary description of the infringement of claim 1 of the '573 patent in connection with the Thoracic VCAR advanced visualization software tool.  MPV reserves the right to modify this description, including, for example, on the basis of information about the '573 Infringing Instrumentalities that it obtains during discovery:

*1. A method for processing a digital image, comprising the steps of:* To the extent the preamble is limiting, Thoracic VCAR is one of a wide range of image analysis tools offered by GE Healthcare for processing digital images.

[1a] *applying a subject matter detector to the digital image to produce a belief map of values indicating the degree of belief that pixels in the digital image belong to target subject matter, said values defining a plurality of belief regions*; On information and belief, Thoracic VCAR applies a subject matter detector in order to identify the desired subject matter, *e.g.*, lungs or elements within the lung, to produce a belief map of which pixels in the image belong to the target subject matter.



Thoracic VCAR gives you the ability to make quantitative measurements of the lungs to aid in the diagnosis of lung disease. The application blends automated lung and airway segmentation with basic review and advanced lung tissue analysis. Using Thoracic VCAR you can generate a clear, concise report that communicates vital medical information to referring physicians and patients..

**Highlights**

- Visually indicates location of condition for specific discussion of diagnosis and prognosis.
- One-click basic 2D review of wall thickness. Shows inner and outer contours.
- Automated segmentation of lungs and airways.
- One-touch 3D airway tracking.
- Automated measurements of wall thickness for intuitive airway analysis.
- Lobe segmentation and visualization.
- Application-specific tools that facilitate analysis of the anatomy and potential diseases.
- Fast, interactive electronic patient reporting.

http://www3.gehealthcare.com/en/products/categories/advanced_visualization/applications/thoracic_vcar.

COMPLAINT FOR PATENT INFRINGEMENT

[1b] *determining the sizes of each of said belief regions in said belief map*; On information and belief, after creating the belief map, the size of the different regions of the image, *e.g.* those believed to be lung, those believed to be airways or other elements, are determined.



- Basic review provides an overall view of the lungs immediately after application launch.
- Parenchyma analysis tool automatically segments lungs and airways.
- Lobe segmentation provides measurements related to the individual lung lobes.
- Airway analysis automatically segments and tracks the airways and displays the results for analysis.
- Selected airways can be further visualized in lumen view, providing you with additional measurements.
- Compare mode allows you to load two exams for disease progress comparison.

*Id*.

[1c] *enhancing the digital image, said enhancing varying pixel by pixel in accordance with both the degree of belief and the size of the respective said belief region.* On information and belief, once the different belief regions are identified and their size determined, the image is enhanced on pixel-by-pixel basis based on the degree to which that pixel is believed to be the target subject matter and the size of the belief region.



Thoracic VCAR is an image analysis software package for AW Workstation. It can be used in conjunction with CT lung images to aid in the assessment of thoracic disease diagnosis and management. The software provides automatic segmentation of the lungs and automatic segmentation and tracking of the airway tree. The software provides quantification of Hounsfield Units and a color-coded display of the thresholds within a segmented region.

*Id*.

38.     GE Healthcare has thus infringed at least claim 1 of the '573 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the '573 Infringing Instrumentalities such that all steps of at least claim 1 are performed.

39.     The users, customers, agents and/or other third parties of the '573 Infringing Instrumentalities (collectively, "third-party infringers") infringed, including under 35 U.S.C. § 271(a), at least claim 1 of the '573 Patent by using the '573 Infringing Instrumentalities.

COMPLAINT FOR PATENT INFRINGEMENT

40.     GE Healthcare has, since at least no later than August 15, 2017, known or been willfully blind to the fact that the third-party infringers' use of the '573 Infringing Instrumentalities directly infringes the '573 Patent.

41.     GE Healthcare's knowledge of the '573 Patent, which covers operating the '573 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 1 of the '573 Patent are met, made it known to GE Healthcare that the third-party infringers' use of the '573 Infringing Instrumentalities would directly infringe the '573 Patent, or, at the very least, render GE Healthcare willfully blind to such infringement.

42.     Having known or been willfully blind to the fact that the third-party infringers' use of the '573 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 1 of the '573 Patent are met would directly infringe the '573 Patent, GE Healthcare, upon information and belief, actively encouraged the third-party infringers to directly infringe the '573 Patent by making, using, testing, selling, offering for sale, importing and/or licensing said '573 Infringing Instrumentalities, and by, for example, marketing '573 Infringing Instrumentalities to the third-party infringers; supporting and managing the third-party infringers' continued use of the '573 Infringing Instrumentalities; and providing technical assistance to the third-party infringers during their continued use of the '573 Infringing Instrumentalities. *See*, *e.g.*, Thoracic VCAR User Guide, available at http://rezervio.ro/awe/AWS_doc_files/documentation/EN/Thoracic%20-%20VCAR/5757795-1EN_r1.pdf.

43.     Thus, GE Healthcare has specifically intended to induce, and has induced, the third-party infringers to infringe at least claim 1 of the '573 Patent, and GE Healthcare has known of or been willfully blind to such infringement. GE Healthcare has advised, encouraged, and/or aided the third-party infringers to

1  engage in direct infringement, including through its encouragement, advice, and

2  assistance to the third-party infringers to use the '573 Infringing Instrumentalities.

3      44.   Based on, among other things, the foregoing facts, GE Healthcare has

4  induced infringement under 35 U.S.C. § 271(b) of at least claim 1 of the '573

5  Patent.

6      45.   Further, GE Healthcare provided and/or licensed to the third-party

7  infringers '573 Infringing Instrumentalities that are especially made and adapted—

8  and specifically intended by GE Healthcare—to be used as components and material

9  parts of the inventions covered by the '573 Patent.  For example, GE Healthcare

10  provided the accused software and related product documentation and instructions,

11  which the third-party infringers used in a manner such that all limitations of at least

12  claim 1 of the '573 Patent are met, and without which the third-party infringers

13  would be unable to have used and availed themselves of the '573 Infringing

14  Instrumentalities in their intended manner.

15      46.   Upon information and belief, GE Healthcare also knew that the '573

16  Infringing Instrumentalities operate in a manner that satisfies all limitations of at

17  least claim 1 of the '573 Patent.

18      47.   The image enhancement technology in the '573 Infringing

19  Instrumentalities is specially made and adapted to infringe at least claim 1 of the

20  '573 Patent.  Upon information and belief, the image enhancement technology in the

21  '573 Infringing Instrumentalities is not a staple article or commodity of commerce,

22  and, because the functionality is designed to work with the '573 Infringing

23  Instrumentalities solely in a manner that is covered by the '573 Patent, it does not

24  have a substantial non-infringing use.  At least by no later than August 15, 2017,

25  based on the foregoing facts, GE Healthcare has known or been willfully blind to

26  the fact that such functionality is especially made and adapted for—and is in fact

27  used in—'573 Infringing Instrumentalities in a manner that is covered by the '573

28  Patent.

COMPLAINT FOR PATENT INFRINGEMENT

48.   Based on, among other things, the foregoing facts, GE Healthcare has contributorily infringed at least claim 1 of the '573 Patent under 35 U.S.C. § 271(c).

49.   GE Healthcare's acts of infringement of the '573 Patent have been willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  Since at least August 15, 2017, GE Healthcare has willfully infringed the '573 Patent by refusing to take a license and continuing the foregoing infringement.

50.   GE Healthcare's acts of direct and indirect infringement have caused damage to MPV, and MPV is entitled to recover damages sustained as a result of GE Healthcare's wrongful acts in an amount subject to proof at trial.

### THIRD CAUSE OF ACTION

### Infringement of Patent No. 7,212,668

51.   MPV incorporates the foregoing paragraphs as though fully set forth herein.

52.   MPV owns by assignment the entire right, title, and interest in the '668 Patent.

53.   The '668 Patent was issued by the United States Patent and Trademark Office on May 1, 2007 and is titled "Digital image processing system and method for emphasizing a main subject of an image." A true and correct copy of the '668 patent is attached hereto as Exhibit C.

54.   Upon information and belief, GE Healthcare has directly infringed at least claim 1 of the '668 Patent by making, using, testing, selling, offering for sale, importing and/or licensing in the United States without authority image analysis software, including without limitation GE Healthcare's Advanced Visualization software tools, including, for example, FlightPlan for Liver ("the '668 Infringing Instrumentalities").

55.   One or more of the '668 Infringing Instrumentalities meets all the limitations of claim 1 of the '668 Patent.  Set forth below (with claim language in

italics) is an exemplary description of the infringement of claim 1 of the '668 patent in connection with the FlightPlan for Liver advanced visualization software tool. MPV reserves the right to modify this description, including, for example, on the basis of information about the '668 Infringing Instrumentalities that it obtains during discovery:

*1. A computer method for modifying an image having a main subject and a background pixels, comprising the steps of:* To the extent the preamble is limiting, FlightPlan for Liver is one of a wide range of image analysis tools offered by GE Healthcare for processing digital images. FlightPlan for Liver performs a method of modifying an image with main subject and background pixels

[1a] *automatically identifying the main subject of the image*; FlightPlan for Liver is designed to identify the arterial tree of a liver, i.e., the main subject.



http://www3.gehealthcare.com/en/products/categories/advanced_visualization/applications/flightplan_for_liver#tabs/.

[1b] *automatically altering pixel values of said image to emphasize said main subject, said altering following said identifying*; Once the main subject is identified, the pixels are altered to emphasize the main subject.

*Id.* (emphasis added).

[1c] *said altering follows any and all identifying of said main subject and wherein said identifying further comprises: segmenting said image into a plurality of regions; and generating a plurality of belief values, each said belief value being*

COMPLAINT FOR PATENT INFRINGEMENT

1 *associated with one of a plurality of regions of the image, said belief values each*
2 *being related to the probability that the associated region is a main subject of the*
3 *image, to provide a main subject belief map.*  On information and belief, the
4 highlighting occurs after the main subject has been identified and the process of
5 identifying the main subject matter uses segmentation techniques to develop belief
6 values and a belief map that a part of the image is the main subject.

7       56.    GE Healthcare has thus infringed at least claim 1 of the '668 Patent by
8 making, using, testing, selling, offering for sale, importing and/or licensing the '668
9 Infringing Instrumentalities such that all steps of at least claim 1 are performed.

10       57.    The users, customers, agents and/or other third parties of the '668
11 Infringing Instrumentalities (collectively, "third-party infringers") infringed,
12 including under 35 U.S.C. § 271(a), at least claim 1 of the '668 Patent by using the
13 '668 Infringing Instrumentalities.

14       58.    GE Healthcare has, since at least no later than August 15, 2017, known
15 or been willfully blind to the fact that the third-party infringers' use of the '668
16 Infringing Instrumentalities directly infringes the '668 Patent.

17       59.    GE Healthcare's knowledge of the '668 Patent, which covers operating
18 the '668 Infringing Instrumentalities in their intended manner and such that all
19 limitations of at least claim 1 of the '668 Patent are met, made it known to GE
20 Healthcare that the third-party infringers' use of the '668 Infringing
21 Instrumentalities would directly infringe the '668 Patent, or, at the very least, render
22 GE Healthcare willfully blind to such infringement.

23       60.    Having known or been willfully blind to the fact that the third-party
24 infringers' use of the '668 Infringing Instrumentalities in their intended manner and
25 such that all limitations of at least claim 1 of the '668 Patent are met would directly
26 infringe the '668 Patent, GE Healthcare, upon information and belief, actively
27 encouraged the third-party infringers to directly infringe the '668 Patent by making,
28 using, testing, selling, offering for sale, importing and/or licensing said '668

COMPLAINT FOR PATENT INFRINGEMENT

Infringing Instrumentalities, and by, for example, marketing '668 Infringing Instrumentalities to the third-party infringers; supporting and managing the third-party infringers' continued use of the '668 Infringing Instrumentalities; and providing technical assistance to the third-party infringers during their continued use of the '668 Infringing Instrumentalities. *See*, *e.g.*,  FlightPlan for Liver User Guide Available at

http://rezervio.ro/awe/AWS_doc_files/documentation/EN/FlightPlan%20for%20Liver/5483345-1EN_r3.pdf.

61.    Thus, GE Healthcare has specifically intended to induce, and has induced, the third-party infringers to infringe at least claim 1 of the '668 Patent, and GE Healthcare has known of or been willfully blind to such infringement.  GE Healthcare has advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the '668 Infringing Instrumentalities.

62.    Based on, among other things, the foregoing facts, GE Healthcare has induced infringement under 35 U.S.C. § 271(b) of at least claim 1 of the '668 Patent.

63.    Further, GE Healthcare provided and/or licensed to the third-party infringers '668 Infringing Instrumentalities that are especially made and adapted— and specifically intended by GE Healthcare—to be used as components and material parts of the inventions covered by the '668 Patent.  For example, GE Healthcare provided the accused software and related product documentation and instructions, which the third-party infringers used in a manner such that all limitations of at least claim 1 of the '668 Patent are met, and without which the third-party infringers would be unable to have used and availed themselves of the '668 Infringing Instrumentalities in their intended manner.

64.     Upon information and belief, GE Healthcare also knew that the '668 Infringing Instrumentalities operate in a manner that satisfies all limitations of at least claim 1 of the '668 Patent.

65.     The main subject emphasis technology in the '668 Infringing Instrumentalities is specially made and adapted to infringe at least claim 1 of the '668 Patent.  Upon information and belief, the main subject emphasis technology in the '668 Infringing Instrumentalities is not a staple article or commodity of commerce, and, because the functionality is designed to work with the '668 Infringing Instrumentalities solely in a manner that is covered by the '668 Patent, it does not have a substantial non-infringing use.  At least by no later than August 15, 2017, based on the foregoing facts, GE Healthcare has known or been willfully blind to the fact that such functionality is especially made and adapted for—and is in fact used in—'668 Infringing Instrumentalities in a manner that is covered by the '668 Patent.

66.     Based on, among other things, the foregoing facts, GE Healthcare has contributorily infringed at least claim 1 of the '668 Patent under 35 U.S.C. § 271(c).

67.     GE Healthcare's acts of infringement of the '668 Patent have been willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  Since at least August 15, 2017, GE Healthcare has willfully infringed the '668 Patent by refusing to take a license and continuing the foregoing infringement.

GE Healthcare's acts of direct and indirect infringement have caused damage to MPV, and MPV is entitled to recover damages sustained as a result of GE Healthcare's wrongful acts in an amount subject to proof at trial.

## FOURTH CAUSE OF ACTION

### Infringement of Patent No. 6,509,910

68.     MPV incorporates the foregoing paragraphs as though fully set forth herein.

69.     MPV owns by assignment the entire right, title, and interest in the '910 Patent.

70.     The '910 Patent was issued by the United States Patent and Trademark Office on January 21, 2003, and is titled "Method and system for interfacing with a digital media frame network." A true and correct copy of the '910 patent is attached hereto as Exhibit D.

71.     Upon information and belief, GE Healthcare has directly infringed at least claim 1 of the '910 Patent by making, using, testing, selling, offering for sale, importing and/or licensing in the United States without authority a medical image and document exchange solution, including without limitation GE Healthcare's Centricity 360 Case Exchange solution ("the '910 Infringing Instrumentalities").

72.     One or more of the '910 Infringing Instrumentalities meets all the limitations of claim 1 of the '910 Patent.  Set forth below (with claim language in italics) is an exemplary description of the infringement of claim 1 of the '910 patent in connection with the Centricity 360 Case Exchange solution.  MPV reserves the right to modify this description, including, for example, on the basis of information about the '910 Infringing Instrumentalities that it obtains during discovery:

*1. A method for sharing digital images over at least one network comprising the steps of:*  To the extent the preamble is limiting, Centricity 360 Case Exchange is part of a "Vendor-neutral, medical image and document exchange solution"  It provides a method for sharing digital images over a network.

*(a) providing a network service over the network;*  Centricity 360 Case Exchange uses the Internet to provide at least one network service, including the distribution of patient images.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

## Centricity 360™
## Case Exchange

Helping distributed teams
collaborate on patient cases,
through a professional
social network

### Introduction

Centricity 360 with Case Exchange helps hospital administrators streamline clinical collaboration with unaffiliated clinicians and patients to help reduce duplicate imaging, avoid unnecessary patient transfers, lower CD distribution costs and enhance referral relationships – all with no capital investment. It liberates affiliated and non-affiliated physicians from silos of care by fostering a clinical community where they can quickly confer on patient cases, simultaneously access patients' images and reports and collaborate on diagnosis and treatment plans. Case Exchange securely manages distribution of patient images and results between healthcare providers across geographical distance or network boundaries.

Centricity 360 represents a suite of cloud-based applications with high scalability, robust security, and intelligent connectivity. The first application in this suite is Case Exchange. Centricity 360 collaboration tools are designed to offer advanced clinician collaboration, seamless device connectivity, embedded predictive analytics tools – all with comprehensive end user controls and data management. Centricity 360 offers a flexible business model that allows organizations to pay for imaging services based on their consumption. Simultaneously, a cloud-based deployment simplifies IT maintenance by reducing onsite infrastructure and offloading software updates, back-up operations and disaster recovery from internal staffs, driving down capital expenses.

16  https://www3.gehealthcare.com/~/media/downloads/us/product/product-
17  categories/healthcare%20it/centricity-360/centricity-360-case-exchange-product-
18  data-sheet-jb25500usa.pdf (emphasis added).

19      *(b) permitting at least one share group to access a network server via the*
20  *network service, the at least one share group including a plurality of members*;
21  Centricity permits a share group to access the network services over the Internet,
22  including the sharing of patient images.

23
24
25
26
27
28

COMPLAINT FOR PATENT INFRINGEMENT



http://www3.gehealthcare.com/en/products/categories/healthcare_it/medical_imaging_informatics_-_ris-pacs-cvis/centricity-imaging-collaboration-suite#tabs (emphasis added).

*(c) associating a device with each of the plurality of members, each device in communication with the server, the device of one or more members of each of the at least one share group being a continuously operating display, each of the plurality of members of the at least one share group capable of being a sharing member and a receiving member,.* Centricity 360 Case Exchange provides access through a web-portal accessible from desktop or mobile devices.  Users access the portal by entering a username and password, which puts that "device" in communication with the server.  These devices, whether a desktop or a mobile device, have a "continuously operating display."

COMPLAINT FOR PATENT INFRINGEMENT

Once a user has access to the Centricity server, they can share and receive images.

## 4 Creating a Case

A case on Centricity Case Exchange and Image Access Portal may contain attachments (such as one or more DICOM studies and associated reports for a patient), or no attachments. If a case contains studies, each study can have multiple series of image data.

## 5 Accessing the Case Inbox

To access the Case Inbox, please follow the steps listed below:

- From the Home page, click **Case Inbox**.

The Case Inbox page is displayed. It shows a list of cases in left vertical pane that displays received and shared cases. A new case you have received for review is displayed in bold. You can scroll through the case list to view cases.

Images from Centricity Case Exchange and Image Access Portal User Guide, available through http://apps.gehealthcare.com/servlet/ClientServlet (emphasis added).

*(d) allowing each sharing member to share digital files with the receiving members of the at least one share group by uploading from the device associated with the sharing member at least one digital file to the network service*; Centricity Case Exchange users can share digital files with other authorized users, including files contained on their local device.

To share a case with one person ( ), enter the first name, last name, or email address of the person you wish to share the case.

To share a case with one group ( ), enter the name of the group you wish to share the case.

If you wish to share the case with more than one person/group, separate each person's name or group's name with a comma.

### Using CD/DVD or File Folder

To create a case from CD/DVD or file folder, please follow the steps listed below:

1. On the **Create a Case** page, from the **Add Attachments** section, click **Add Imaging from CD/DVD/Local DICOM**.

   The **Browse for Folder** window is displayed.

2. Select a folder location that contains DICOM study files on your computer or network, and then click **OK**.

*Id*.

COMPLAINT FOR PATENT INFRINGEMENT

*(e) downloading from the network service the at least one digital file to the devices associated with the receiving members of the at least one share group;* Users can download cases from the cloud to the local device.

- Select View All from the drop-down list next to Case Summary label to view all translations of the case. Each transaction shows the Sender (From), Recipients (To), Transaction Date and Time in the header section, and Clinical Reason, Message, Images & Documents, and Thumbnails for each attachment (both non-DICOM and DICOM with the name and date). Every translation of the case is separated by a horizontal line.

*Id.*

*(f) automatically displaying the at least one digital file on the continuously operating displays associated with the receiving members of the at least one share group.*  Downloaded files are displayed on the device.

- Select View All from the drop-down list next to Case Summary label to view all translations of the case. Each transaction shows the Sender (From), Recipients (To), Transaction Date and Time in the header section, and Clinical Reason, Message, Images & Documents, and Thumbnails for each attachment (both non-DICOM and DICOM with the name and date). Every translation of the case is separated by a horizontal line.

*Id.*

73.   GE Healthcare has thus infringed at least claim 1 of the '910 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the '910 Infringing Instrumentalities such that all steps of at least claim 1 are performed.

74.   The users, customers, agents and/or other third parties of the '910 Infringing Instrumentalities (collectively, "third-party infringers") infringed, including under 35 U.S.C. § 271(a), at least claim 1 of the '910 Patent by using the '910 Infringing Instrumentalities.

75.   GE Healthcare has, since at least no later than August 15, 2017, known or been willfully blind to the fact that the third-party infringers' use of the '910 Infringing Instrumentalities directly infringes the '910 Patent.

76.   GE Healthcare's knowledge of the '910 Patent, which covers operating the '910 Infringing Instrumentalities in their intended manner and such that all

limitations of at least claim 1 of the '910 Patent are met, made it known to GE Healthcare that the third-party infringers' use of the '910 Infringing Instrumentalities would directly infringe the '910 Patent, or, at the very least, render GE Healthcare willfully blind to such infringement.

77.     Having known or been willfully blind to the fact that the third-party infringers' use of the '910 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 1 of the '910 Patent are met would directly infringe the '910 Patent, GE Healthcare, upon information and belief, actively encouraged the third-party infringers to directly infringe the '910 Patent by making, using, testing, selling, offering for sale, importing and/or licensing said '910 Infringing Instrumentalities, and by, for example, marketing '910 Infringing Instrumentalities to the third-party infringers; supporting and managing the third-party infringers' continued use of the '910 Infringing Instrumentalities; and providing technical assistance to the third-party infringers during their continued use of the '910 Infringing Instrumentalities. *See*, *e.g.*,  Centricity Case Exchange and Image Access Portal User Guide, available through http://apps.gehealthcare.com/servlet/ClientServlet.

78.     Thus, GE Healthcare has specifically intended to induce, and has induced, the third-party infringers to infringe at least claim 1 of the '910 Patent, and GE Healthcare has known of or been willfully blind to such infringement. GE Healthcare has advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the '910 Infringing Instrumentalities.

79.     Based on, among other things, the foregoing facts, GE Healthcare has induced infringement under 35 U.S.C. § 271(b) of at least claim 1 of the '910 Patent.

80.     Further, GE Healthcare provided and/or licensed to the third-party infringers '910 Infringing Instrumentalities that are especially made and adapted—

-26-

and specifically intended by GE Healthcare—to be used as components and material parts of the inventions covered by the '910 Patent. For example, GE Healthcare provided the accused software and related product documentation and instructions, which the third-party infringers used in a manner such that all limitations of at least claim 1 of the '910 Patent are met, and without which the third-party infringers would be unable to have used and availed themselves of the '910 Infringing Instrumentalities in their intended manner.

81.     Upon information and belief, GE Healthcare also knew that the '910 Infringing Instrumentalities operate in a manner that satisfies all limitations of at least claim 1 of the '910 Patent.

82.     The image exchange technology in the '910 Infringing Instrumentalities is specially made and adapted to infringe at least claim 1 of the '910 Patent. Upon information and belief, the image exchange technology in the '910 Infringing Instrumentalities is not a staple article or commodity of commerce, and, because the functionality is designed to work with the '910 Infringing Instrumentalities solely in a manner that is covered by the '910 Patent, it does not have a substantial non-infringing use. At least by no later than August 15, 2017, based on the foregoing facts, GE Healthcare has known or been willfully blind to the fact that such functionality is especially made and adapted for—and is in fact used in—'910 Infringing Instrumentalities in a manner that is covered by the '910 Patent.

83.     Based on, among other things, the foregoing facts, GE Healthcare has contributorily infringed at least claim 1 of the '910 Patent under 35 U.S.C. § 271(c).

84.     GE Healthcare's acts of infringement of the '910 Patent have been willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016). Since at least August 15, 2017, GE Healthcare has willfully infringed the '910 Patent by refusing to take a license and continuing the foregoing infringement.

85.    GE Healthcare's acts of direct and indirect infringement have caused damage to MPV, and MPV is entitled to recover damages sustained as a result of GE Healthcare's wrongful acts in an amount subject to proof at trial.

## FIFTH CAUSE OF ACTION

### Infringement of Patent No. 8,984,419

86.    MPV incorporates the foregoing paragraphs as though fully set forth herein.

87.    MPV owns by assignment the entire right, title, and interest in the '419 Patent.

88.    The '419 Patent was issued by the United States Patent and Trademark Office on March 17, 2015, and is titled "Digital media frame." A true and correct copy of the '419 patent is attached hereto as Exhibit E.

89.    Upon information and belief, GE Healthcare has directly infringed at least claim 1 of the '419 Patent by making, using, testing, selling, offering for sale, importing and/or licensing in the United States without authority image display tools, including without limitation GE Healthcare's READY View image analysis and display tool ("the '419 Infringing Instrumentalities").

90.    One or more of the '419 Infringing Instrumentalities meets all the limitations of claim 1 of the '419 Patent.  Set forth below (with claim language in italics) is an exemplary description of the infringement of claim 1 of the '419 patent in connection with the READY View image analysis and display tool.  MPV reserves the right to modify this description, including, for example, on the basis of information about the '419 Infringing Instrumentalities that it obtains during discovery:

*1. A method comprising:* [1a] *receiving a user selected operating mode selected from a plurality of operating modes including a picture mode that displays pictorial representations and an information mode that displays informational representations;* READY View is an image display tool that receives a user

-28-

1  selection of an operating mode from among a plurality of operating modes,

2  including a picture mode and an information mode.

3



http://www3.gehealthcare.com/en/products/categories/advanced_visualization/appli

cations/ready_view#tabs/ (emphasis added).

The layout is "customizable" and "adjustable" such that a user can select the desired

operating mode depending on what is to be displayed.



*Id.*

[1b] *setting the digital media frame to the user selected operating mode,*

*wherein the digital media frame comprises two or more display portions for*

*displaying independent text and/or graphics*; After receiving the user's mode

selection, the display of the "digital media frame," which is the computer running

the READY View software, is set to the selected setting, which includes the display

of text and graphics.

[1c] *receiving user selected customized data comprising at least one of*

*information representations and pictorial representations*; *and* [1d] *based on the*

*user selected operating mode, automatically displaying the user selected customized*

*data in at least one of the two or more display portions on the digital media frame*

*when the digital media frame is in an operating state.*  The READY View software

receives user data in the form of MR images and other data and displays that data

based on the user's selection.

*Id.*

91.    GE Healthcare has thus infringed at least claim 1 of the '419 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the '419 Infringing Instrumentalities such that all steps of at least claim 1 are performed.

92.    The users, customers, agents and/or other third parties of the '419 Infringing Instrumentalities (collectively, "third-party infringers") infringed, including under 35 U.S.C. § 271(a), at least claim 1 of the '419 Patent by using the '419 Infringing Instrumentalities.

93.    GE Healthcare has, since at least no later than August 15, 2017, known or been willfully blind to the fact that the third-party infringers' use of the '419 Infringing Instrumentalities directly infringes the '419 Patent.

94.    GE Healthcare's knowledge of the '419 Patent, which covers operating the '419 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 1 of the '419 Patent are met, made it known to GE Healthcare that the third-party infringers' use of the '419 Infringing Instrumentalities would directly infringe the '419 Patent, or, at the very least, render GE Healthcare willfully blind to such infringement.

95.    Having known or been willfully blind to the fact that the third-party infringers' use of the '419 Infringing Instrumentalities in their intended manner and such that all limitations of at least claim 1 of the '419 Patent are met would directly infringe the '419 Patent, GE Healthcare, upon information and belief, actively

-30-

encouraged the third-party infringers to directly infringe the '419 Patent by making, using, testing, selling, offering for sale, importing and/or licensing said '419 Infringing Instrumentalities, and by, for example, marketing '419 Infringing Instrumentalities to the third-party infringers; supporting and managing the third-party infringers' continued use of the '419 Infringing Instrumentalities; and providing technical assistance to the third-party infringers during their continued use of the '419 Infringing Instrumentalities. *See*, *e.g.*,  READY ViewUser Guide, available through http://apps.gehealthcare.com/servlet/ClientServlet.

96.     Thus, GE Healthcare has specifically intended to induce, and has induced, the third-party infringers to infringe at least claim 1 of the '419 Patent, and GE Healthcare has known of or been willfully blind to such infringement. GE Healthcare has advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the '419 Infringing Instrumentalities.

97.     Based on, among other things, the foregoing facts, GE Healthcare has induced infringement under 35 U.S.C. § 271(b) of at least claim 1 of the '419 Patent.

98.     Further, GE Healthcare provided and/or licensed to the third-party infringers '419 Infringing Instrumentalities that are especially made and adapted— and specifically intended by GE Healthcare—to be used as components and material parts of the inventions covered by the '419 Patent.  For example, GE Healthcare provided the accused software and related product documentation and instructions, which the third-party infringers used in a manner such that all limitations of at least claim 1 of the '419 Patent are met, and without which the third-party infringers would be unable to have used and availed themselves of the '419 Infringing Instrumentalities in their intended manner.

99.   Upon information and belief, GE Healthcare also knew that the '419 Infringing Instrumentalities operate in a manner that satisfies all limitations of at least claim 1 of the '419 Patent.

100.   The image display technology in the '419 Infringing Instrumentalities is specially made and adapted to infringe at least claim 1 of the '419 Patent.  Upon information and belief, the image display technology in the '419 Infringing Instrumentalities is not a staple article or commodity of commerce, and, because the functionality is designed to work with the '419 Infringing Instrumentalities solely in a manner that is covered by the '419 Patent, it does not have a substantial non-infringing use.  At least by no later than August 15, 2017, based on the foregoing facts, GE Healthcare has known or been willfully blind to the fact that such functionality is especially made and adapted for—and is in fact used in—'419 Infringing Instrumentalities in a manner that is covered by the '419 Patent.

101.   Based on, among other things, the foregoing facts, GE Healthcare has contributorily infringed at least claim 1 of the '419 Patent under 35 U.S.C. § 271(c).

102.   GE Healthcare's acts of infringement of the '419 Patent have been willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  Since at least August 15, 2017, GE Healthcare has willfully infringed the '419 Patent by refusing to take a license and continuing the foregoing infringement.

GE Healthcare's acts of direct and indirect infringement have caused damage to MPV, and MPV is entitled to recover damages sustained as a result of GE Healthcare's wrongful acts in an amount subject to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MPV respectfully requests the following relief:

A.   A judgment that GE Healthcare has willfully infringed the '085 Patent;

B.   A judgment that GE Healthcare has willfully infringed the '573 Patent;

C.   A judgment that GE Healthcare has willfully infringed the '668 Patent

-32-

1         D.      A judgment that GE Healthcare has willfully infringed the '910 Patent

2         E.      A judgment that GE Healthcare has willfully infringed the '419 Patent

3         F.      A judgment that MPV be awarded damages adequate to compensate it

4 for GE Healthcare's past infringement and any continuing or future infringement of

5 the '085 Patent, the '573 Patent, the '668 Patent, the '910 Patent, and the '419

6 Patent, including pre-judgment and post-judgment interest, costs and disbursements

7 as justified under 35 U.S.C. § 284 and an accounting;

8         G.      That this be determined to be an exceptional case under 35 U.S.C. §

9 285 and that MPV be awarded enhanced damages up to treble damages for willful

10 infringement as provided by 35 U.S.C. § 284;

11         H.      That MPV be granted its reasonable attorneys' fees in this action;

12         I.      That this Court award MPV its costs; and

13         J.      That this Court award MPV such other and further relief as the Court

14 deems proper.

15 DATED: June 4, 2018                QUINN EMANUEL URQUHART &
16                                     SULLIVAN, LLP

17                              */s/ Amar L. Thakur*

18                              Amar L. Thakur
                                    amarthakur@quinnemanuel.com
19                              Bruce Zisser
20                              brucezisser@quinnemanuel.com

21                              865 S. Figueroa St., 10th Floor
22                              Los Angeles, CA 90017
23                              Phone:  (213) 443-3000
                                    Fax:  (213) 443-3100
24

25                              *Attorneys for Plaintiff Monument Peak*
                             *Ventures, LLC*

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiff MPV hereby demands trial by jury for all causes of action, claims, or

3   issues in this action that are triable as a matter of right to a jury.

4

5   DATED:  June 4, 2018                QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP
6

7                                        */s/ Amar L. Thakur*
                                        _____
8                                       Amar L. Thakur
                                        amarthakur@quinnemanuel.com
9                                       Bruce Zisser
                                        brucezisser@quinnemanuel.com
10

11                                      865 S. Figueroa St., 10th Floor
                                        Los Angeles, CA 90017
12                                      Phone:  (213) 443-3000
                                        Fax:  (213) 443-3100
13

14

15                                      *Attorneys for Plaintiff Monument Peak*
                                        *Ventures, LLC*

16

17

18

19

20

21

22

23

24

25

26

27

28

-34-

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Monument Peak Ventures, LLC

**(b)** County of Residence of First Listed Plaintiff   Texas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017; (213) 443-3000

**DEFENDANTS**

GE Healthcare, Inc.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☒ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
35 U.S.C. 1 et seq.
Brief description of cause:
Patent infringement

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE                                                                 SIGNATURE OF ATTORNEY OF RECORD
06/01/2018                                                    /s/ Amar L. Thakur

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____